******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

KAHN, J., with whom ROBINSON, C. J., and McDON-ALD, J., join, dissenting. I respectfully disagree with the majority's conclusion that the Appellate Court incorrectly concluded that the number of supervisors necessary to provide adequate supervision on an elementary school playground is not within the field of ordinary knowledge and experience of judges and jurors and, therefore, expert testimony was required. See *Osborn* v. *Waterbury*, 181 Conn. App. 239, 246, 185 A.3d 675 (2018); see also, e.g., *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, 317 Conn. 357, 375, 119 A.3d 462 (2015); *LePage* v. *Horne*, 262 Conn. 116, 125, 809 A.2d 505 (2002). The present case demonstrates that the question of what constitutes adequate supervision of children on a school playground is a complex one, not readily resolved by a fact finder without the assistance of expert testimony. Given the procedural and factual background of the present case, I would conclude that the plaintiffs, Tatayana Osborn (child) and Tacarra Smith, were required to introduce expert testimony to establish the applicable standard of care. Therefore, I respectfully dissent.

The unfortunate incident that gave rise to this case has clearly impacted the life of a child. The child, at the time a fifth grade student at a Waterbury public elementary school, was attacked by her peers on the playground at recess, resulting in two lacerations on her face—one of which resulted in a permanent scar—and recurring headaches. Keeping children safe while they are at school is of the utmost importance to cities, boards of education, and schools, and the provision of adequate supervision serves the goals of engaging students and keeping playgrounds safe. Unfortunately, even with the most stringent supervision, fights, bullying, and accidents occur on playgrounds. See, e.g., *Despres* v. *Greenwich Boys & Girls Club Assn., Inc.*, Docket No. CV-97-0155783-S, 1999 WL 487565, *5 (Conn. Super. July 2, 1999) ("[e]ven assuming arguendo that there was one supervisor, supervising only one child, standing directly below her and warning her to use the monkey bars properly by not skipping any bars, it is still possible that the plaintiff could fall off and injure her elbow"). Therefore, when an incident such as this occurs on a playground during recess, the question of adequate supervision turns on whether the school made reasonable efforts to prevent a risk of injury to children on the playground. See *Santopietro* v. *New Haven*, 239 Conn. 207, 228–30, 682 A.2d 106 (1996) (concluding that plaintiff failed to prove, by expert testimony, that softball umpires breached their duty of care to prevent unreasonable risk of injury to spectators).

In the present case, the principal of the elementary

school at the time of the incident testified at trial that the defendant Waterbury Board of Education (board) had a supervision policy requiring a minimum of 1 supervisor for every 125 students on the playground.[1] That testimony was the only evidence presented at trial regarding an appropriate supervisor to student ratio.[2] The trial court found, in its memorandum of decision, that "1 student intern and 3—or 4—staff members were not sufficient to exercise proper control over perhaps as many as 400 students."[3] As found by the trial court, there was a maximum of 400 students and a minimum of 4 supervisors on the playground at the time of the incident, resulting in a supervisor to student ratio of 1:100.[4] The trial court concluded that this ratio of supervisors to students was insufficient to satisfy the duty of the defendants, the city of Waterbury and the board,[5] to make reasonable efforts to prevent a risk of injury to the children on the playground. The trial court's finding, that there was an inadequate number of supervisors on the playground at the time of the incident, was the *sole* basis for its conclusion that the defendants were liable for negligent supervision. By predicating its conclusion on a ratio that exceeded the only one testified to at trial—the board's policy of 1:125—the trial court not only held that supervision was inadequate under the circumstances of this case, but also implicitly concluded that the board's policy does not comply with the applicable standard of care. The issue presented in this appeal, therefore, is whether expert testimony was required to enable the trier of fact to determine that the defendants' supervision of the playground was negligent, notwithstanding the fact that the supervisor to student ratio complied with or exceeded the goals set forth in the board's policy.[6]

The trial court's determination of whether expert testimony was required to support the plaintiffs' claim of negligence against the defendants was a legal determination subject to plenary review. See, e.g., *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, supra, 317 Conn. 373. "[E]xpert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. . . . Expert testimony is required when the question involved goes beyond the field of ordinary knowledge and experience of judges or jurors." (Citation omitted; internal quotation marks omitted.); *LePage* v. *Horne*, supra, 262 Conn. 125; see also *Doe* v. *Hartford Roman Catholic Diocesan Corp.*, supra, 374; *Doe* v. *Yale University*, 252 Conn. 641, 686–87, 748 A.2d 834 (2000) ("[w]hether expert testimony was required to support the plaintiff's claim compels us to consider whether the determination of the standard of care requires knowledge that is beyond the experience of [the] fact finder" [internal quotation marks omitted]).

The question of whether expert testimony is required

does not turn solely on whether the issue presented is one of ordinary or professional negligence. Expert testimony is most commonly associated with cases that are "akin to allegations of professional negligence or malpractice," such as legal malpractice or medical malpractice. *Santopietro* v. *New Haven*, supra, 239 Conn. 226; see, e.g., *Downs* v. *Trias*, 306 Conn. 81, 88 and n.5, 49 A.3d 180 (2012). Even in professional malpractice actions, however, expert testimony is not required "where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson." (Internal quotation marks omitted.) *Davis* v. *Margolis*, 215 Conn. 408, 416 n.6, 576 A.2d 489 (1990). In many cases of ordinary negligence, the issues presented at trial may be matters of common knowledge with which the fact finder has familiarity and, therefore, no expert is needed to testify as to the standard of care and whether the defendant breached that duty. In other cases of ordinary negligence, however, issues related to the standard of care and whether that duty was breached are beyond the ken of the average fact finder and expert testimony is required. Therefore, "[t]he question of whether expert testimony is required is not resolved by characterizing the case as sounding in [professional] malpractice or ordinary negligence, but rather by determining whether the issue, unaided by expert testimony, is within the realm of a jury's ordinary knowledge. Thus, professional negligence claims do not necessarily require expert testimony, and claims of ordinary negligence may require expert testimony. The appropriate question is whether the issue can be reliably decided by a jury without the assistance of expert testimony." *Cammarota* v. *Guerrera*, 148 Conn. App. 743, 751, 87 A.3d 1134, cert. denied, 311 Conn. 944, 90 A.3d 975 (2014).

This court's reasoning and holding in *Santopietro* is directly applicable to the present case. See *Santopietro* v. *New Haven*, supra, 239 Conn. 226–27, 229–32. In *Santopietro*, a spectator at a softball game brought a negligence action against the umpires of the game to recover for injuries he suffered when he was struck by a bat thrown by a player. Id., 209. We noted that "[a]n umpire obtains, through formal training and experience, a familiarity with the rules of the sport, a technical expertise in their application, and an understanding of the likely consequences of officiating decisions. As a result, the umpire possesses knowledge of the standard of care to which an umpire reasonably may be held, and of what constitutes a violation of that standard, that is beyond the experience and ken of the ordinary fact finder." Id., 227. Furthermore, we held that the "fact finder's lack of experience [was] exacerbated by the highly discretionary nature of the umpire's task" to control the softball game so as to prevent an unreasonable risk of injury to spectators. Id. Thus, the fact finder must determine "not just whether in hindsight the

umpire erred, but also whether the umpire's error constituted an abuse of his broad discretion." Id. Relying on these principles, we concluded that the fact finder's decision would require specialized knowledge. The breach of duty, therefore, was required to be proved, in the absence of exceptional circumstances, by expert testimony. Id., 229.

In the present case, the question of whether 4 to 5 supervisors for up to as many as 400 students, as found by the trial court, was sufficient to satisfy the duty owed by the defendants is not within the realm of a fact finder's ordinary knowledge. Although many fact finders may be familiar with the supervision of children, and even the supervision of large numbers of children, that familiarity does not preclude the need for expert testimony when the fact finder would not be familiar with the procedures and considerations of education professionals when determining appropriate supervisor to student ratios. See *Franck* v. *Minisink Valley School District*, 136 App. Div. 2d 588, 588–89, 523 N.Y.S.2d 573 (1988) (when fifth grade student was kicked in head at recess by another student doing cartwheels, court held that, "[i]n applying the proper standard, familiarity of the jury with cartwheeling should not preclude expert testimony where the jury would not be familiar with accepted professional procedures for supervising cartwheeling"). The need for a board policy setting forth ratios supports the view that the appropriate supervision ratio for an elementary school playground based on the unique circumstances of that setting is not a simple issue with which every adult would be automatically familiar. Instead, expert guidance is necessary to establish the standard of care.

Similar to the umpires' control of a softball game to protect spectators from injury, schools and boards of education develop and apply policies related to the supervision of students at recess based on their formal training and experience, familiarity with applicable rules and statutes, and an understanding of the injuries that may result if they fail to implement sufficient policies. In addition, the decision of how many supervisors is required is complex and highly discretionary in nature.[7] In arranging for appropriate supervision on playgrounds during recess, consideration should be given to the size and visibility of the playground area, the playground equipment, the age and disability status of the students, and a history of incidents, among other criteria. See generally Alliance of Schools for Cooperative Insurance Programs, Student Supervision Guidelines, p. 3, available at http://ascip.org/wp-content/uploads/2014/05/Student-Supervision-Guidelines.pdf (last visited November 22, 2019). There are no set standards available for appropriate ratios of supervisors to students, and each play area uniquely determines the amount of supervision needed. Id.

I acknowledge that there will be some exceptional circumstances in which expert testimony is not required. See *Santopietro* v. *New Haven*, supra, 239 Conn. 229; see also *David* v. *Margolis*, supra, 215 Conn. 416 n.6 (noting expert testimony is not required, even in professional negligence cases, "where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson" [internal quotation marks omitted]). The present case, however, does not involve such circumstances. The present situation is not one in which the trial court found no supervisors present at recess or found that the supervisors present were engaged in a nonsupervisory activity and clearly not paying attention (e.g., on their cell phones), which would be an obvious want of care clear even to a layperson. Instead, the trial court's findings establish that there was a supervisor to student ratio of at least 1:100, and there were no additional findings that would suggest that exceptional circumstances demonstrated a gross want of care. Because the standard of care to which a board may reasonably be held in providing adequate supervision and what constitutes a violation of that standard are beyond the ken of the ordinary fact finder, and there are no extraordinary circumstances present that would demonstrate an obvious and gross want of care to the ordinary fact finder, I would hold that expert testimony was required in the present case.

While this court has not had previous occasion to apply the principles of *Santopietro* to the playground supervision context, our trial courts have done so and applied similar reasoning. See, e.g., *Miller* v. *Bridgeport*, Docket No. CV-14-6041193-S, 2017 WL 1333986 (Conn. Super. March 20, 2017), aff'd, 188 Conn. App. 901, 201 A.3d 1160 (2019); *Despres* v. *Greenwich Boys & Girls Club Assn.*, *Inc.*, supra, 1999 WL 487565, *4–5. In *Despres*, a student attending an after-school program claimed that the Greenwich Boys and Girls Club Association, Inc., provided negligent supervision when the student was injured on the playground after falling from the monkey bars. *Despres* v. *Greenwich Boys & Girls Club Assn.*, *Inc.*, supra, *1, 2. At the time, there was "no written policy for child supervision and no mandatory adult-child ratio," but "the informal policy of the facility was that one supervisor would be responsible for ten to fifteen children depending on the activity." Id., *2. The trial court found that, at the time of the incident, there were no more than fifteen children on the playground and one supervisor, which was in compliance with the unwritten policy. Id. The trial court also made explicit findings that the supervisor was "positioned in a place where she could see the entire playground area and performed the 'seven second scan' which she learned from her experience as a lifeguard . . . and nothing unusual was happening that afternoon . . . ." Id., *4. In that case, the trial court relied on the reasoning of this court in *Santopietro*, which held that, " '[i]f the

determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required.' " Id., *4 (quoting *Santopietro* v. *New Haven*, supra, 239 Conn. 226). The trial court in *Despres*, finding that a determination of the standard of care of the supervisors of an after-school program and whether that duty was breached was beyond the experience of an ordinary fact finder, concluded that expert testimony was required and that, "[w]ithout such expert testimony, there [was] no evidence that the defendant provided careless or negligent supervision of the plaintiff." *Despres* v. *Greenwich Boys & Girls Club Assn., Inc.*, supra, *5.

In *Miller*, a three year old child attended a program at Skane Center School run by the Bridgeport Board of Education. See *Miller* v. *Bridgeport*, supra, 2017 WL 1333986, *1. Each school day, three or four classes of students participated in recess at the same time and all of the teachers and paraprofessionals from each classroom would supervise the recess. Id., *2. The plaintiff was struck by a tricycle being ridden by another student at recess and suffered injuries; the plaintiff then brought a negligent supervision claim against the defendant Bridgeport Board of Education. Id. The trial court found that "[t]he evidence before the court fail[ed] to establish that the defendant was negligent as alleged. There was no evidence from any expert witnesses that the defendant's conduct with regard to the amount of supervision that they provided students during recess was inadequate or failed to meet appropriate educational standards for schools such as Skane." Id., *3. In concluding that the plaintiffs failed to prove that the defendant was negligent, the trial court specifically found that "there was a lack of expert testimony with regard to the applicable standard of care and whether that duty was breached" as well as "an absence of evidence that the conduct of the defendant and any of its employees violated a school policy or directive . . . [and] [t]he plaintiff did not provide evidence of any rule, policy, or directive requiring the defendant to undertake any specific safety precautions in connection with the activities conducted during recess." Id.

Because, in the present case, the sole basis of the trial court's conclusion that the defendants' supervision of the children was negligent was the supervisor to student ratio, an expert witness should have been required and, without one, the plaintiffs failed to meet their evidentiary burden. I agree with the Appellate Court that "the plaintiffs failed to present expert testimony as to the standard of care related to the number of supervisors needed on an elementary school playground to ensure the safety of the students during recess" and that "[t]he plaintiffs also failed to present expert testimony that the number of staff on the playground supervising the children at the time [of the incident] constituted a breach of the standard of care."

*Osborn* v. *Waterbury*, supra, 181 Conn. App. 247. Because these determinations are beyond the knowledge and experience of the ordinary fact finder, the Appellate Court correctly concluded that the trial court erred as a matter of law by not requiring expert testimony.[8]

For these reasons, I respectfully dissent.

[1] The written policy, however, was not admitted into evidence, and the court made no finding in that regard. The following testimony was given by the principal at trial:

"[The Plaintiff's Counsel]: Okay. Now, as far as you're concerned, did you ever give your paraprofessionals and your staff any training having to do with harassment and bullying?

"[The Witness]: We've had a lot of different things regarding that.

"[The Plaintiff's Counsel]: Okay. And prior to [April], 2012, for that school year, what training did you give them?

"[The Witness]: We had had reviewed the definition of bullying, talked about, you know, being proactive, monitoring, you know, areas of the school, the—where those transition areas are, at recess, at lunch, all the down times, PE, different areas. We had a guidance counsel[or] who spoke with the classes as well, participated in our, you know, staff meetings if it occurred on days that they were in the building.

"[The Plaintiff's Counsel]: And part of that procedure was to have recess monitors out there, so to speak, is that correct, I believe on the recess grounds?

"[The Witness]: Well, they're required out there to begin with. It wasn't added because of—

"[The Plaintiff's Counsel]: And they're required why?

"[The Witness]: For safety and monitoring of all students.

"[The Plaintiff's Counsel]: Okay. And were you the one [who] made this requirement?

"[The Witness]: No, it was from the [board] and, you know, in the handbook for policies and procedures.

"[The Plaintiff's Counsel]: All right. And do you know how many people were required at the recess and who they would be?

"[The Witness]: By the [board], the policy was 1—1 staff to 125 students."

[2] I agree with the majority that the record on appeal could be clearer as to whether the policy was in effect at the time of the incident. I disagree, however, with the majority's suggestion that there was not enough evidence in the record to allow the trial court, as fact finder, to draw the reasonable inference that the policy testified to by the principal was one that was in existence and applicable at the time of the incident.

[3] On appeal to this court, the parties do not dispute the trial court's findings and, therefore, I do not review the underlying factual basis of this finding. I offer, however, the following observations. The testimony at trial described varying numbers of children on the playground at the time of the incident. The paraprofessional who arrived first to the incident testified that there were no more than fifty students on the playground at the time the fight occurred. The principal testified that there were approximately 400 students *in the entire school* from kindergarten through fifth grade, and that those students ate lunch in 3 waves. The principal further testified that fourth and fifth grade students ate lunch together, there were 3 classes of each grade for a total of 6 classes, and there were about 25 students in each class, totaling 150 students in the lunch wave in question. When the students had finished eating lunch, they left the cafeteria and went to the playground for recess. There was no testimony that conflicted with these statements by the principal and, in fact, the plaintiffs' lawyer in his closing argument before the trial court conceded that there were probably between 90 and 150 students on the playground at the time of the incident. Despite this testimony, the trial court found that the entire school ate lunch and attended recess at the same time. In addition, "perhaps as many as 400 students" is an indeterminate number of students that encompasses everything from a handful of students to 400 students, for which 4 or 5 total supervisors may have been sufficient.

[4] If I consider the maximum number of students and the maximum number of supervisors on the playground at the time of the incident found by the trial court, then there was a supervisor to student ratio of 1:80.

[5] See footnote 1 of the majority opinion for other individuals named as

defendants in the plaintiffs' complaint.

[6] Although rules and policies do not establish the standard of care, under these circumstances, an expert should have been required to testify as to the standard of care and whether the board's policy failed to meet that standard of care. See, e.g., *Van Steensburg* v. *Lawrence & Memorial Hospitals*, 194 Conn. 500, 506, 481 A.2d 750 (1984) ("[W]e point out that hospital rules, regulations and policies do not themselves establish the standard of care. . . . The failure to follow such rules and regulations is, however, evidence of negligence." [Citations omitted.]).

[7] Our legislature recognized the important role that supervision plays in the prevention of bullying and intervention strategies regarding bullying, and acknowledges that effective strategies may include "adequate adult supervision of outdoor areas, hallways, the lunchroom and other specific areas . . . ." General Statutes § 10-222g. The development of policies by schools and boards that provide for adequate supervision of students to prevent bullying or to promote general safety is a complicated process. In recognition of this complexity, the Department of Education has compiled various resources to provide guidance on the provision of safe playgrounds and made them available through the Connecticut government website. The website includes links to federal resources provided by the United States Departments of Education, Health and Human Services, and Justice as well as other organizations, such as the Peace Education Foundation and Peaceful Playgrounds, which can be consulted when developing individual plans and playgrounds. See Connecticut Department of Education, Bullying and Harassment, available at https://portal.ct.gov/SDE/School-Climate/Bullying-and-Harassment/Related-Resources (last visited November 22, 2019).

[8] The second certified issue was: "Did the plaintiffs receive adequate notice of the need for expert testimony to determine the scope of the duty of care such that a directed judgment was appropriate in this case?" *Osborn* v. *Waterbury*, 329 Conn. 901, 184 A.3d 1214 (2018). It is unclear precisely what the plaintiffs are arguing. The plaintiffs appear to suggest that the defendants' claim in their closing argument before the trial court, that the plaintiffs improperly failed to meet their evidentiary burden in the absence of expert testimony, suggested that the plaintiffs' claim sounded in professional negligence and not ordinary negligence. The plaintiffs then claim on appeal to this court that the defendants were required to provide the plaintiffs with notice that expert testimony was required. I find no merit in the plaintiffs' argument. The plaintiffs rest their argument on the premise that requiring an expert witness transforms the present case from one of ordinary negligence to one of professional malpractice, thereby altering the standard of care. This proposition mischaracterizes the need for expert testimony in negligence claims. The use of an expert witness to support a claim of ordinary negligence case does not transform it into a claim of professional malpractice. As this court has made clear, "professional negligence claims do not necessarily require expert testimony, and claims of ordinary negligence may require expert testimony. The appropriate question is whether the issue can be reliably decided by a jury without the assistance of expert testimony." *Cammarota* v. *Guerrera*, supra, 148 Conn. App. 751. Therefore, even though the plaintiffs' claim sounded in ordinary negligence, an expert could have—and, in the present case, *should* have—been required. In addition, the burden is on the plaintiffs to present sufficient evidence at trial to support their claim of negligent supervision. There is no requirement that the defendants alert the plaintiffs or the court when that burden is not met in order to provide the plaintiffs an opportunity to present more evidence. The plaintiffs were on notice from the time they filed their original complaint that they were required to meet their evidentiary burden that the defendants were negligent in their supervision of students on the playground. Without expert testimony, they failed to do so. For these reasons, I would hold that the defendants were not required to provide notice to the plaintiffs that they failed to meet their evidentiary burden without expert testimony.